IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 08-_____ |
| v. | : | DATE FILED: _____ |
| MOHAMMAD REZA VAGHARI<br>    a/k/a "Mitch Vaghari"<br>MIR HOSSEIN GHAEMI | :<br><br>:<br><br>:<br><br>:<br><br>:<br><br>: | VIOLATION:<br>18 U.S.C. § 371 (conspiracy to violate IEEPA - 1 count)<br>50 U.S.C. § 1705 (violation of IEEPA - 3 counts)<br>18 U.S.C. § 1425 (naturalization fraud - 1 count)<br>18 U.S.C. § 1546 (possessing immigration documents procured by fraud - 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of forfeiture |

INDICTMENT

COUNT ONE

(Conspiracy to Violate the International Emergency Economic Powers Act)

**THE GRAND JURY CHARGES THAT:**

**BACKGROUND**

At all times material to this indictment:

1.Defendant MOHAMMAD REZA VAGHARI, a/k/a "Mitch Vaghari," was a citizen of the Islamic Republic of Iran ("Iran") residing in the Eastern District of Pennsylvania. Defendant VAGHARI became a lawful permanent resident of the United States on or about November 17, 1998.

2.Defendant MIR HOSSEIN GHAEMI was a citizen of Iran residing in the Eastern District of Pennsylvania and the District of Maryland. Defendant GHAEMI became a lawful permanent resident of the United States on or about September 21, 2001.

3. Defendants together conducted business under the name Saamen Company, LLC ("Saamen"), which was based in the Eastern District of Pennsylvania and through which the defendants conspired to export goods, technology, and services from the United States for ultimate delivery to Iran in violation of United States law. These goods, technology, and services included, but were not limited to, computing equipment, ultrasonic liquid processors, fuel cell technology, electrical equipment, sophisticated laboratory and medical equipment, hydrophones, automobile parts, and centrifuges.

4. The International Emergency Economic Powers Act, 50 U.S.C. §§ 1701, *et seq.*, granted the President of the United States the authority to, among other things, "investigate, . . . prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . . ." 50 U.S.C. § 1702(a)(1)(B). Section 1701 granted the President the power to exercise this authority upon declaration of a national emergency.

5. Presidents of the United States have exercised their authority to declare a national emergency with respect to Iran. For example, on or about March 15, 1995, President William J. Clinton issued Executive Order 12957, which, among other things, stated that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," and therefore declared "a national emergency to deal with that threat." The national emergency with respect to Iran has been extended annually through successive presidential notices.

6.      Presidents of the United States later issued additional Executive Orders — Executive Orders No. 12959 (1995) and No. 13059 (1997) [collectively, the "Executive Orders"] — that subjected Iran to a comprehensive trade embargo. The Executive Orders prohibited, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Executive Orders.

7.      The Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations ("ITR") [Title 31, Code of Federal Regulations, Part 560] to implement the sanctions imposed by the Executive Orders. Within the Department of the Treasury, the Office of Foreign Assets Control ("OFAC") was responsible for administering the ITR and deciding whether to issue licenses to engage in otherwise prohibited transactions with Iran.

8.      Among other things, the ITR provided the following:

(a)     Title 31, Code of Federal Regulations, Section 560.206 prohibited a United States person, wherever located, from engaging "in any transaction or dealing in or related to (1) Goods or services of Iranian origin or owned or controlled by the Government of Iran; or (2) Goods, technology, or services for exportation, reexportation, sale, or supply, directly or indirectly, to Iran or the Government of Iran;"

(b) Title 31, Code of Federal Regulations, Section 560.204 prohibited "the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran . . . including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that [1] Such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran; or [2] Such goods, technology, or services are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or reexported exclusively or predominantly to Iran or the Government of Iran;"

(c) Title 31, Code of Federal Regulations, Section 560.208 stated that no "United States person, wherever located, may approve, finance, facilitate, or guarantee any transaction by a foreign person where the transaction by that foreign person would be prohibited by this part if performed by a United States person or within the United States;" and

(d) Title 31, Code of Federal Regulations, Section 560.203 prohibited "[a]ny transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part."

9. Defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI never obtained a license from OFAC, either individually or on behalf of Saamen, to engage in transactions or other activities involving Iran.

## THE CONSPIRACY

10.     From in or about 2002 through and including the present, in the Eastern District of Pennsylvania and elsewhere, defendants

**MOHAMMAD REZA VAGHARI**
**a/k/a "Mitch Vaghari"**
**MIR HOSSEIN GHAEMI**

at least one of whom was a United States person, conspired and agreed with others known and unknown to the grand jury to knowingly and willfully violate IEEPA and the regulations promulgated thereunder, as described below, in violation of Title 50, United States Code, Section 1705.

## MANNER AND MEANS

It was a part of the conspiracy that:

11.     Co-conspirators known and unknown to the grand jury collected orders from customers in Iran for a variety of goods, technology, and services offered for sale in the United States, and then transmitted these orders to defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI in the United States.

12.     Defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI thereafter obtained information about the requested goods, technology, and services. In many cases, defendants VAGHARI and/or GHAEMI purchased the goods, technology, and services in the United States and shipped those purchased products to co-conspirators known and unknown to the grand jury in the United Arab Emirates, all the while knowing that the purchased products were eventually destined for Iran.

13. Co-conspirators known and unknown to the grand jury received the goods, technology, and services in the United Arab Emirates and then caused those products to be delivered to customers in Iran.

**OVERT ACTS**

In furtherance of this conspiracy, the defendants and others known and unknown to the grand jury committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about February 26, 2002, a co-conspirator not named as a defendant herein ("CC-1") sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI proposing that they work together to export items to Iran, including automobile parts and laboratory equipment.

2. On or about November 4, 2002, a co-conspirator not named as a defendant herein ("CC-2") sent an electronic mail message to defendant MIR HOSSEIN GHAEMI proposing that they obtain two computers for end-users in Iran.

3. On or about November 5, 2002, CC-2 sent an electronic mail message to defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI discussing CC-2's efforts to negotiate an agreement to supply approximately 100 computers per month to a customer in Iran.

4. On or about November 11, 2002, CC-2 sent an electronic mail message to defendant MIR HOSSEIN GHAEMI requesting a price quote for ten computers for delivery to a customer in Iran.

5.  On or about November 14, 2002, defendant MOHAMMAD REZA VAGHARI caused approximately five laptop computers to be shipped to CC-2 in Dubai, United Arab Emirates.

6.  On or about December 23, 2002, CC-2 transferred approximately $11,000 by wire to a bank account registered to Saamen in the United States.

7.  On or about February 6, 2003, defendant MOHAMMAD REZA VAGHARI caused approximately thirteen laptop computers to be shipped to CC-2 in Dubai, United Arab Emirates.

8.  On or about June 22, 2003, CC-2 transferred approximately $34,972 by wire to a bank account registered to Saamen in the United States.

9.  On or about June 23, 2003, CC-2 transferred approximately $9,500 by wire to a bank account registered to Saamen in the United States.

10. On or about June 23, 2003, CC-2 sent an electronic mail message to defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI regarding payments for their past shipments of materials and requesting that they inquire about purchasing, among other things, approximately 134 helmets for helicopter pilots.

11. On or about December 24, 2003, CC-2 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI regarding a new order for approximately ten fuel cell systems like the ones defendant MOHAMMAD REZA VAGHARI had provided earlier, as well as approximately two back pressure regulators.

12. On or about December 26, 2003, defendant MOHAMMAD REZA VAGHARI placed an order for approximately ten fuel cell systems from a company located in Boulder County, Colorado ("Company #1").

13. On or about January 22, 2004, defendant MOHAMMAD REZA VAGHARI purchased an ultrasonic liquid processor and related accessories from a company located in Nassau County, New York ("Company #2").

14. On or about June 7, 2004, defendant MOHAMMAD REZA VAGHARI placed an order for approximately four fuel cell systems and related accessories from Company #1.

15. On or about June 27, 2004, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI requesting another ultrasonic liquid processor, as well as fuel cell systems, to be provided to Tarbiat Modarres University in Tehran, Iran.

16. On or about July 19, 2004, defendant MOHAMMAD REZA VAGHARI purchased an ultrasonic liquid processor and related accessories from Company #2.

17. On or about August 26, 2004, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI requesting a price quote for a frequency response analyzer.

18. On or about September 9, 2004, defendant MOHAMMAD REZA VAGHARI placed an order for approximately ten fuel cell systems and related accessories from Company #1.

19. On or about September 10, 2004, defendant MOHAMMAD REZA VAGHARI ordered approximately two back pressure regulators from a company located in Burlington County, New Jersey ("Company #3").

20. On or about September 14, 2004, CC-2 transferred approximately $6,020 by wire to a bank account registered to Saamen in the United States.

21. On or about September 15, 2004, a co-conspirator not named as a defendant herein ("CC-3") transferred approximately $6,000 by wire to a bank account registered to Saamen in the United States.

22. On or about February 24, 2005, defendant MOHAMMAD REZA VAGHARI purchased an ultrasonic liquid processor and related accessories from Company #2.

23. On or about March 11, 2005, defendant MOHAMMAD REZA VAGHARI purchased an ultrasonic liquid processor and related accessories from Company #2.

24. On or about May 7, 2005, defendant MOHAMMAD REZA VAGHARI transmitted a signed non-disclosure agreement to a company located in Middlesex County, Massachusetts ("Company #4") in the course of negotiating the purchase of fuel cell systems.

25. In or about May 2005, defendant MOHAMMAD REZA VAGHARI caused an ultrasonic liquid processor to be returned to Company #2 for repairs.

26. On or about May 17, 2005, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI regarding a new order from a representative of the Pasteur Institute of Iran.

27. On or about June 2, 2005, CC-2 transferred approximately $1,143 by wire to a bank account registered to Saamen in the United States.

28. On or about June 13, 2005, defendant MOHAMMAD REZA VAGHARI purchased an ultrasonic liquid processor and related accessories from Company #2.

29. On or about July 13, 2005, defendant MOHAMMAD REZA VAGHARI spoke via telephone to a representative of a company located in Lehigh County, Pennsylvania ("Company #5") to inquire about the status of defendant VAGHARI's order for a centrifuge.

30. On or about July 24, 2005, CC-2 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI seeking a price quote for a high intensity focused ultrasound machine for a customer in Iran.

31. On or about July 26, 2005, defendant MOHAMMAD REZA VAGHARI requested a price quote from a company located in Middlesex County, Massachusetts ("Company #6") for more than $12,000 worth of laboratory equipment, including an awake animal system.

32. On or about August 8, 2005, defendant MOHAMMAD REZA VAGHARI purchased approximately ten microdialysis probes and related accessories from a company located in Niagara County, New York ("Company #7").

33. On or about August 14, 2005, defendant MOHAMMAD REZA VAGHARI purchased an ultrasonic liquid processor and related accessories from Company #2.

34. On or about September 9, 2005, defendant MOHAMMAD REZA VAGHARI ordered electrical equipment from a company located in Sarasota County, Florida ("Company #8"), including high voltage isolators, accupulser signal generators, and a preamplifier with probe and related accessories.

35. On or about September 14, 2005, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI regarding a new business opportunity to supply approximately 10,000 window regulator motors to a company located in Iran.

36. On or about September 19, 2005, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI stating, among other things, that a customer in Iran wanted to purchase testosterone standard (HPLC grade) and pertussis toxin B oligomer.

37. On or about October 18, 2005, defendant MOHAMMAD REZA VAGHARI purchased approximately two variable-speed pumps from a company located in Lake County, Illinois ("Company #9").

38. On or about October 27, 2005, defendant MOHAMMAD REZA VAGHARI caused to be shipped several items, including a stimulus isolator, to a co-conspirator not named as a defendant herein ("CC-4") in the United Arab Emirates.

39. On or about March 5, 2008, defendant MIR HOSSEIN GHAEMI carried into the United States approximately $7,000 in cash that he received from CC-2 and that represented proceeds of prior exports by Saamen.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

(Violation of the International Emergency Economic Powers Act)

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    Paragraphs One through Nine, Eleven through Thirteen, and Overt Acts One through Thirty-Nine of Count One of this indictment are realleged here.

    2.    From at least in or about January 2004 through and including the present, in the Eastern District of Pennsylvania and elsewhere, defendant

**MOHAMMAD REZA VAGHARI**
**a/k/a "Mitch Vaghari,"**

a United States person, willfully and knowingly violated IEEPA, and the regulations promulgated thereunder, as described above, and aided and abetted the violation, that is, without obtaining the required OFAC approval, defendant VAGHARI engaged in transactions relating to or dealing in ultrasonic liquid processors to be exported to customers located in Iran via the United Arab Emirates.

In violation of Title 50, United States Code, Sections 1701, et seq.; Executive Orders 12957, 12959, and 13059; Title 31, Code of Federal Regulations, Sections 560.201, et seq., and Title 18, United States Code, Section 2.

## COUNT THREE

(Violation of the International Emergency Economic Powers Act)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs One through Nine, Eleven through Thirteen, and Overt Acts One through Thirty-Nine of Count One of this indictment are realleged here.

2. From at least in or about mid-2005 through and including the present, in the Eastern District of Pennsylvania and elsewhere, defendant

**MOHAMMAD REZA VAGHARI**
**a/k/a "Mitch Vaghari,"**

a United States person, willfully and knowingly violated IEEPA, and the regulations promulgated thereunder, as described above, and aided and abetted the violation, that is, without obtaining the required OFAC approval, defendant VAGHARI engaged in transactions relating to or dealing in stimulus isolators and laboratory equipment to be exported to the Pasteur Institute of Iran, an entity located in Iran, via the United Arab Emirates.

In violation of Title 50, United States Code, Sections 1701, et seq.; Executive Orders 12957, 12959, and 13059; Title 31, Code of Federal Regulations, Sections 560.201, et seq., and Title 18, United States Code, Section 2.

## COUNT FOUR

(Violation of the International Emergency Economic Powers Act)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs One through Nine, Eleven through Thirteen, and Overt Acts One through Thirty-Nine of Count One of this indictment are realleged here.

2. From at least in or about mid-2003 through and including the present, in the Eastern District of Pennsylvania and elsewhere, defendant

**MOHAMMAD REZA VAGHARI**
**a/k/a "Mitch Vaghari,"**

a United States person, willfully and knowingly violated and attempted to violate IEEPA, and the regulations promulgated thereunder, as described above, and aided and abetted the violation, that is, without obtaining the required OFAC approval, defendant VAGHARI engaged in transactions relating to or dealing in fuel cell systems to be exported to customers located in Iran via the United Arab Emirates.

In violation of Title 50, United States Code, Sections 1701, et seq.; Executive Orders 12957, 12959, and 13059; Title 31, Code of Federal Regulations, Sections 560.201, et seq., and Title 18, United States Code, Section 2.

## COUNT FIVE

(Naturalization Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

Between in or about November 2004 through and including the present, in the Eastern District of Pennsylvania and elsewhere, defendant

**MOHAMMAD REZA VAGHARI
a/k/a "Mitch Vaghari"**

knowingly attempted to procure and obtain, contrary to law, naturalization as a United States citizen for himself, by making in connection with his application for naturalization false representations and statements, including that he had never committed a crime or offense for which he was not arrested, when in fact, as defendant knew, these representations and statements were false based on his crimes as described in Counts One, Two, and Four of this indictment, as well as the criminal conduct by which he obtained lawful permanent resident status in the United States in or about 1998.

In violation of Title 18, United States Code, Section 1425.

## COUNT SIX

(Possession of Immigration Documents Procured by Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

Between on or about November 17, 1998, through and including the present, in the Eastern District of Pennsylvania and elsewhere, defendant

**MOHAMMAD REZA VAGHARI**
**a/k/a "Mitch Vaghari"**

knowingly possessed a document, prescribed by statute and regulation as evidence of authorized stay in the United States, that is, a "permanent resident card" in the name of "Mohammad R. Vaghari," knowing it to be forged, counterfeited, altered, falsely made, and otherwise procured by fraud and unlawfully obtained.

In violation of Title 18, United States Code, Section 1546(a).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT**:

    1.    As a result of the violations of Title 50, United States Code, Section 1705, and Title 18, United States Code, Section 371 set forth in this indictment, defendants

**MOHAMMAD REZA VAGHARI,
a/k/a "Mitch Vaghari," and
MIR HOSSEIN GHAEMI**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses, including, but not limited to the sum of at least $100,000.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**


_____
**LAURIE MAGID**
**ACTING UNITED STATES ATTORNEY**