**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **MOHAMMAD REZA VAGHARI** | : | **NO.  08-693-01** |
| **a/k/a "Mitch Vaghari"** | : | |
| **MIR HOSSEIN GHAEMI** | : | **-02** |

**DuBOIS, J.**                                                                 **JULY 27, 2009**

**M E M O R A N D U M**

**I.     BACKGROUND**

On November 13, 2008, the government filed a six-count Indictment against defendants

Mohammad Reza Vaghari and Mir Hossein Ghaemi.  Vaghari is named in all six counts of the

Indictment; Ghaemi is named in Count One.  The Indictment charges defendants with conspiracy

to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1705 *et*

*seq.*, in violation of 18 U.S.C. § 371 (Count One); three substantive counts of violating IEEPA,

in violation of, *inter alia*, 50 U.S.C. §§ 1701 *et seq.*, and aiding and abetting, in violation of 18

U.S.C. § 2 (Counts Two, Three and Four); naturalization fraud, in violation of 18 U.S.C. § 1425

(Count Five); and possession of immigration documents procured by fraud, in violation of 18

U.S.C. § 1546(a) (Count Six).  In particular, the government alleges that "[d]efendants together

conducted business under the name Saamen Company , LLC ('Saamen'), . . . through which the

defendants conspired to export goods, technology, and services from the United States for

ultimate delivery to Iran . . . ."  (Indict. ¶ 3.)

Defendants now move to dismiss all six counts of the Indictment.  Defendants further

move to strike certain overt acts from the conspiracy charge, Count One of the Indictment.  For

the reasons that follow, defendants' Motion to Dismiss is denied.  Defendants' Motion to Strike

is granted in part and denied in part.  The Motion to Strike is granted to the extent that Overt

Acts 1–10 are stricken from the substantive counts charging violations of IEEPA, Counts Two,

Three, and Four.  In all other respects, defendants' Motion to Strike is denied.

## II.   DEFENDANT MOHAMMAD REZA VAGHARI'S OMNIBUS MOTION TO DISMISS COUNTS ONE THROUGH SIX OF THE INDICTMENT[1]

Defendants' Motion to Dismiss presents two arguments in favor of dismissal of Counts

One through Four (the IEEPA counts) and two arguments in favor of dismissal of Counts Five

and Six (the immigration counts).  This Memorandum will discuss each argument in turn.

### A.     The IEEPA Counts (Counts One through Four)

#### 1.     Unconstitutional Delegation

Defendants argue that "IEEPA delegates essentially unbridled discretion to the Executive

Branch to promulgate regulations that amount to criminal laws. . . . Yet, the IEEPA provides no

real 'intelligible principles' on which the Executive Branch can base its promulgation of criminal

regulations . . . ."  (Defs.' Mot. to Dismiss ("MTD") 14.)  Courts that have considered this non-

delegation challenge to IEEPA have repeatedly upheld the statute's constitutionality.  See, e.g.,

United States v. Dhafir, 461 F.3d 211, 215–17 (2d Cir. 2006); United States v. Arch Trading Co.,

987 F.2d 1087, 1092–94 (4th Cir. 1993); United States v. Amirnazmi, No. 08-CR-429-01, 2009

WL 32481, at *2–3 (E.D. Pa. Jan. 5, 2009); Clancy v. Office of Foreign Assets Control, No. 05-

---

[1] Defendant Ghaemi filed a Motion to Join Motions of Co-Defendant, Mohammad Reza Vaghari, which included the Omnibus Motion to Dismiss to the extent that it applies to Ghaemi. Ghaemi is named only in Count One of the Indictment.  The Motion to Join was granted by the Court on May 14, 2009.  Accordingly, the Motion to Dismiss Count One is on behalf of both defendants; the Motion to Dismiss the remaining counts is only on behalf of Vaghari.

2

C-580, 2007 WL 1051767, at *20–21 (E.D. Wis. Mar. 31, 2007), aff'd, 559 F.3d 595 (7th Cir. 2009); United States v. Chalmers, 474 F. Supp. 2d 555, 566–68 (S.D.N.Y. 2007); United States v. Esfahani, No. 05-CR-0255, 2006 WL 163025, at *1–4 (N.D. Ill. Jan. 17, 2006); United States v. Anvari-Hamedani, 378 F. Supp. 2d 821, 827–30 (N.D. Ohio 2005); Global Relief Found., Inc. v. O'Neill, 207 F. Supp. 2d 779, 807 (N.D. Ill. 2002), aff'd, 315 F.3d 748 (7th Cir. 2002).

In Dhafir, for example, the Second Circuit first noted that "impermissible delegation has rarely been found" and that in the sphere of foreign affairs, "delegation is afforded even broader deference."  461 F.3d at 215.  In light of these principles and Supreme Court precedent upholding Congressional delegation to the executive, the court held that "IEEPA 'meaningfully constrains the [President's] discretion' by requiring that '[t]he authorities granted to the President . . . may only be exercised to deal with an unusual and extraordinary threat with respect to to which a national emergency has been declared."  Id. at 215–17 (quoting Touby v. United States, 500 U.S. 160, 166 (1991); 50 U.S.C. § 1701(b)).  Moreover, "[t]he IEEPA delegation is . . . subject to the President's periodic re-affirmation of necessity and is conditioned on reporting to Congress."  Id. at 217 (citing 50 U.S.C. § 1703.)  Congress has the authority to "terminate the President's declaration of emergency" and has "endorsed the President's actions and enacted legislation codifying the sanctions."  Id. (citing 50 U.S.C. § 1706).  The Dhafir court concluded that with respect to IEEPA, "[t]here is . . . no question that the will of Congress has been obeyed."  Id. (internal quotation marks & citations omitted).

The reasoning of Dhafir and the other cases cited above is persuasive, and the Court likewise concludes that IEEPA does not represent an unconstitutional delegation of power. Defendants' non-delegation challenge to IEEPA is rejected, and the Motion to Dismiss the

3

IEEPA counts on this ground is denied.

2.        **Unconstitutional Vagueness**

Defendants argue that the Office of Foreign Assets Control ("OFAC") regulations, which effectuate the President's Executive Orders pursuant to IEEPA, are unconstitutionally vague. (Defs.' MTD 17–20.)  According to defendants, the OFAC regulations both fail to provide clear notice as to what conduct is prohibited and authorize arbitrary and discriminatory enforcement. (Id.)

Courts to have addressed this vagueness challenge to IEEPA, the related Executive Orders, and the OFAC regulations have uniformly rejected it.  In United States v. Ehsan, 163 F.3d 855, 860 (4th Cir. 1998), the Fourth Circuit held that the defendant's vagueness challenge failed on the ground that "Executive Order 12959 and the Iranian Transaction [OFAC] Regulations are not ambiguous . . . ."  Accord United States v. Quinn, 401 F. Supp. 2d 80, 100 (D.D.C. 2005); Anvari-Hamedani, 378 F. Supp. 2d at 830–31.

Moreover, "[a] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 499 (1982).  IEEPA contains such a scienter requirement:  "A person who *willfully* commits, *willfully* attempts to commit, or *willfully* conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both."  50 U.S.C. § 1705(c) (emphasis added).  "[I]t is well settled that a requirement of willfulness makes a vagueness challenge especially difficult to sustain because a mind intent on willful evasion is inconsistent

with surprised innocence."  United States v. Lindh, 212 F. Supp. 2d 541, 574 (E.D. Va. 2002)

(internal quotation marks & citations omitted) (rejecting a vagueness challenge to IEEPA as a

conviction would require proof of specific intent).  As § 1705(c) imposes a willfulness

requirement, IEEPA and the related Executive Orders and OFAC regulations are not

unconstitutionally vague.  Defendants' Motion to Dismiss the IEEPA counts on the ground of

vagueness is denied.

      **B.**      **The Immigration Counts (Counts Five and Six)**

            **1.**      **Facial Sufficiency of the Indictment**

According to Vaghari, Counts Five and Six of the Indictment do not sufficiently appraise

him of what he must be prepared to meet at trial and must therefore be dismissed.  (Defs.' MTD

8–11.)

Count Five charges:

> Between in or about November 2004 through and including the present, . . . [Vaghari]
> knowingly attempted to procure and obtain, contrary to law, naturalization as a United
> States citizen for himself, by making in connection with his application for naturalization
> false representations and statements, including that he had never committed a crime or
> offense for which he was not arrested, when in fact, as defendant knew, these
> representations and statements were false based on his crimes as described in Counts
> One, Two, and Four of this indictment, as well as the criminal conduct by which he
> obtained lawful permanent resident status in the United States in or about 1998.  In
> violation of Title 18, United States Code, Section 1425.

(Indict. 15.)

Count Six charges:

> Between on or about November 17, 1998, through and including the present, . . .
> [Vaghari] knowingly possessed a document, prescribed by statute and regulation as
> evidence of authorized stay in the United States, that is, a "permanent resident card" in
> the name of "Mohammad R. Vaghari," knowing it to be forged, counterfeited, altered,
> falsely made, and otherwise procured by fraud and unlawfully obtained.  In violation of

Title 18, United States Code, Section 1546(a).

(Indict. 16.)

The Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted). Moreover, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Id. (internal quotation marks & citations omitted). While "the language of the statute may be used in the general description of an offence, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Id. at 117–18 (internal quotation marks & citations omitted).

Under Third Circuit precedent, an indictment is sufficient "so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (internal quotation marks & citations omitted). The statutory language itself meets this requirements "so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Id. (citation omitted).

6

The contents of an indictment are also governed by Federal Rule of Criminal Procedure 7(c)(1), which instructs that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."

Counts Five and Six of the instant Indictment satisfy Hamling, Kemp, and Rule 7(c)(1). The counts clearly set forth the immigration violations with which Vaghari is charged and provide "sufficient factual orientation." Kemp, 500 F.3d at 280. Count Five charges that Vaghari made false statements to procure naturalization and identifies the statement at issue—the representation that he had never committed a crime for which he was not arrested—and the reasons that the government contends that the statement was false. Count Six charges that Vaghari knowingly possessed a permanent resident card "knowing it to be forged, counterfeited, altered, falsely made, and otherwise procured by fraud and unlawfully obtained." (Indict. 16.) Although Count Six does not specify the precise unlawful conduct used to obtain the permanent resident card, it suffices to "inform the accused of the specific offence, coming under the general description, with which he is charged." Hamling, 418 U.S. at 117–18. Accordingly, Counts Five and Six of the Indictment are facially sufficient.

Vaghari also argues that "the question on Mr. Vaghari's naturalization form to which he allegedly gave a false answer ['Have you ever committed a crime or offense for which you were NOT arrested?'] is both highly subjective and not sufficiently specific to support what is essentially a false statement charge made under the penalties of perjury." (Defs.' MTD 10.) In particular, Vaghari contends that "a simple 'no' answer to this broad and subjective question under [Vaghari's] circumstances cannot possibly support a prosecution for naturalization fraud under 18 U.S.C. § 1425." (Id. at 12.)

The alleged flaw in Count Five of the Indictment is fully addressed by the scienter requirement of 18 U.S.C. § 1425(a).  Courts to have considered this issue have held that "to sustain a section 1425(a) conviction, the government must prove that the defendant acted with a culpable state of mind.  An alien may violate section 1425(a) by seeking naturalization with the knowledge that the applicant is ineligible for naturalization, or has knowingly misrepresented facts or presented false documents."  Amouzadeh v. Winfrey, 467 F.3d 451, 457 (5th Cir. 2006); accord United States v. Damrah, 412 F.3d 618, 627 (6th Cir. 2005); United States v. Pasillas-Gaytan, 192 F.3d 864, 868 (9th Cir. 1999); United States v. Aquino, No. 07-CR-428, 2008 WL 302363, at *2 (N.D. Ohio Feb. 1, 2008) (considering the same "other crimes" question at issue in the instant case).

The foregoing authority makes clear that in order to convict Vaghari on Count Five, the government will have to prove that when he answered that he had not committed any crimes for which he had not been arrested, that he *knew* that this answer was false.  Even if Vaghari is convicted of the other counts in the Indictment, to obtain a conviction on Count Five, the government must show that Vaghari *knew* that he had broken the law at the time he answered "no."  Vaghari in fact concedes that this is the correct interpretation of § 1425(a) but argues that the government has not produced evidence in discovery that can satisfy the scienter requirement. (Defs.' MTD 11–12.)  An argument about the sufficiency of the government's evidence is, however, premature at this stage of the proceedings.

Moreover, the jury will likely have the responsibility to assess the ambiguity of the question on the naturalization petition.  "It is only in exceptional cases that a question is so ambiguous, fundamentally ambiguous, such that no answer can be false as a matter of law.  If

there is no fundamental ambiguity, the jury resolves any ambiguities." <u>Damrah</u>, 412 F.3d at 627 (citations omitted).  The question at issue—whether Vaghari committed any crimes for which he was not arrested—is not so fundamentally ambiguous as to take this inquiry away from the jury. For all of these reasons, the Court concludes that Vaghari's sufficiency challenges are without merit and denies Vaghari's Motion to Dismiss Counts Five and Six on that ground.

### 2.      Statute of Limitations

Vaghari argues that Counts Five and Six rely on conduct for which prosecution is barred by the statute of limitations.  (Defs.' MTD 12–13.)  In particular, Vaghari contends that Counts Five and Six charge him with conduct that occurred prior to obtaining his green card in 1998, which is outside of the relevant limitations periods.  (<u>Id.</u> at 13.)

Count Five charges a violation of 18 U.S.C. § 1425, which makes it unlawful to "knowingly procure[] or attempt[] to procure, contrary to law, the naturalization of any person . . . ."  The statute of limitations for violations of § 1425 is ten years.  <u>Id.</u> at § 3291.  The government alleges that Vaghari filed a naturalization petition in November 2004 in which "he intentionally did not disclose that he had obtained his green card several years earlier by fraud. According to the government, Vaghari also lied when he answered 'no' to the question:  'Have you ever committed a crime or offense for which you were NOT arrested?'"  (Gov't Resp. to MTD 13.)  While these questions concerned conduct that occurred prior to Vaghari's filing his naturalization petition, his allegedly fraudulent statements were made in 2004, well within the ten-year statute of limitations.  The relevant date for the statute of limitations is when the alleged misrepresentations were made—here, in 2004.  The government further alleges that Vaghari attended an interview in support of his naturalization petition on July 19, 2005.  Any fraudulent

statements made at that interview—even if they concern conduct occurring before November 16,

1998—would also fall within the limitations period.

Count Six charges a violation of 18 U.S.C. § 1546(a), which makes the following conduct

unlawful:

> [To] knowingly forge[], counterfeit[], alter[], or falsely make[] any immigrant or
> nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other
> document prescribed by statute or regulation for entry into or as evidence of authorized
> stay or employment in the United States, or utter[], use[], attempt[] to use, possess[],
> obtain[], accept[], or receive[] any such visa, permit, border crossing card, alien
> registration receipt card, or other document prescribed by statute or regulation for entry
> into or as evidence of authorized stay or employment in the United States, knowing it to
> be forged, counterfeited, altered, or falsely made, or to have been procured by means of
> any false claim or statement, or to have been otherwise procured by fraud or unlawfully
> obtained.

The statute of limitations of violations of § 1546(a) is five years.  Id. at § 3282(a).

Vaghari is charged with knowing possession of a permanent resident card "knowing it to

be forged, counterfeited, altered, falsely made, and otherwise procured by fraud and unlawfully

obtained."  (Indict. 16.)  "Possession . . . is almost universally recognized to be a continuing

offense."  United States v. Hull, 456 F.3d 133, 146 (3d Cir. 2006) (collecting cases);

accord United States v. Krstic, 558 F.3d 1010, 1017 (9th Cir. 2009) (holding, in the context of

§ 1546(a), that "possessory offenses have long been described as 'continuing offenses' that are

not complete upon receipt of the prohibited item.  Rather, the statute of limitations does not

begin to run until the possessor parts with the item.").  Accordingly, the relevant date for the

statute of limitations analysis is the final date of possession, not the date that the permanent

resident card was obtained by fraud.  So long as Vaghari possessed his allegedly unlawful

permanent resident card within the five years prior to the filing of the Indictment on November

16, 2008, the charged conduct falls within the statute of limitations.  The government charges

that Vaghari possessed the permanent resident card as of the date of the Indictment.  Such

possession, a continuing offense, was within the five-year statute of limitations.

For all of the aforementioned reasons, Vaghari's statute of limitations arguments are

without merit.  Vaghari's Motion to Dismiss Counts Five and Six as barred by the applicable

statutes of limitations is denied.

## III.    DEFENDANT MOHAMMAD VAGHARI'S MOTION TO STRIKE OVERT ACTS NOS. 1–4; 10–11; 15; 17; 26; 30; 35–36 AND 5–9 FROM COUNT ONE OF THE INDICTMENT[2]

Defendants move to strike Overt Acts Nos. 1–11, 15, 17, 26, 30, and 35 from Count One

of the Indictment—Conspiracy to Violate the International Emergency Economic Powers Act

("IEEPA").[3]  Defendants present three arguments in support of their Motion to Strike.

---

[2] Defendant Ghaemi filed a Motion to Join Motions of Co-Defendant, Mohammad Reza Vaghari, which included the Motion to Strike to the extent that it applies to Ghaemi.  The Motion to Join was granted by the Court on May 14, 2009.  Accordingly, the Motion to Strike is on behalf of both defendants.

[3] The challenged Overt Acts are as follows:

1. On or about February 26, 2002, a co-conspirator not named as a defendant herein ("CC-1") sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI proposing that they work together to export items to Iran, including automobile parts and laboratory equipment.
2. On or about November 4, 2002, a co-conspirator not named as a defendant herein ("CC-2") sent an electronic mail message to defendant MIR HOSSEIN GHAEMI proposing that they obtain two computers for end-users in Iran.
3. On or about November 5, 2002, CC-2 sent an electronic mail message to defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI discussing CC-2's efforts to negotiate an agreement to supply approximately 100 computers per month to a customer in Iran.
4. On or about November 11, 2002, CC-2 sent an electronic mail message to defendant MIR HOSSEIN GHAEMI requesting a price quote for ten computers for delivery to a customer in Iran.
5. On or about November 14, 2002, defendant MOHAMMAD REZA VAGHARI caused

This Memorandum will discuss each argument in turn.

## A.     Independent Evidence of a Conspiracy

Defendants argue that "there is no independent evidence, apart from the alleged

unindicted co-conspirators' statements, to prove that a conspiracy existed between [defendants]

---

approximately five laptop computers to be shipped to CC-2 in Dubai, United Arab Emirates.

6.  On or about December 23, 2003, CC-2 transferred approximately $11,000 by wire to a bank account registered to Saamen in the United States.

7.  On or about February 6, 2003, defendant MOHAMMAD REZA VAGHARI caused approximately thirteen laptop computers to be shipped to CC-2 in Dubai, United Arab Emirates.

8.  On or about June 22, 2003, CC-2 transferred approximately $34,972 by wire to a bank account registered to Saamen in the United States.

9.  On or about June 23, 2003, CC-2 transferred approximately $9,500 by wire to a bank account registered to Saamen in the United States.

10.  On or about June 23, 2003, CC-2 sent an electronic mail message to defendants MOHAMMAD REZA VAGHARI and MIR HOSSEIN GHAEMI regarding payments for their past shipments of materials and requesting that they inquire about purchasing, among other things, approximately 134 helmets for helicopter pilots.

11.  On or about December 24, 3003, CC-2 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI regarding a new order for approximately ten fuel cell systems like the ones defendant MOHAMMAD REZA VAGHARI had provided earlier, as well as approximately two back pressure regulators.

15.  On or about June 27, 2004, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI requesting another ultrasonic liquid processor, as well as fuel systems, to be provided to Tarbiat Modarres University in Tehran, Iran.

17.  On or about August 26, 2004, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI requesting a price quote for a frequency response analyzer.

26.  On or about May 17, 2005, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI regarding a new order from a representative of the Pasteur Institute of Iran.

30.  On or about July 24, 2005, CC-2 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI seeking a price quote for a high intensity focused ultrasound machine for a customer in Iran.

35.  On or about September 14, 2005, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI regarding a new business opportunity to supply approximately 10,000 window regulator motors to a company located in Iran.

36.  On or about September 19, 2005, CC-1 sent an electronic mail message to defendant MOHAMMAD REZA VAGHARI stating, among other things, that a customer in Iran wanted to purchase testosterone standard (HPLC grade) and pertussis toxin B oligomer.

and the unindicted co-conspirators."  (Defs.' Mot. to Strike 3.)  According to defendants, without such independent evidence, emails between defendants and the unindicted coconspirators are inadmissible as statements of coconspirators pursuant to Federal Rule of Evidence 801(d)(2)(E). (Id. at 3–5.)  This argument applies to Overt Acts Nos. 1–4, 10–11, 15, 17, 26, 30, and 35–36.

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.  Rule 801(d)(2) further provides that "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)."

In the Third Circuit, for a district court to admit an out-of-court statement under the coconspirator exception, it "must find by a preponderance of the evidence that:  (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy."  United States v. Weaver, 507 F.3d 178, 181 (3d Cir. 2007) (internal quotation marks & citations omitted).  To prove the existence of a conspiracy by a preponderance of the evidence, the government may rely on the statements themselves but must also produce some independent evidence of the conspiracy.  See Bourjaily v. United States, 483 U.S. 171, 178–80 (1987); Fed. R. Evid. 801(d)(2).

"The existence and membership of a conspiracy are preliminary questions of fact that must be resolved by the district court before a challenged statement may be admitted under Rule 801(d)(2)(E)."  5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.34[6][c][I] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2009).  The district court

13

may resolve these questions of fact in two ways:  either the court may hold a preliminary

evidentiary hearing or it may conditionally admit alleged coconspirator statements "subject to

later proof that will 'connect up' the statement with proof of the underlying conspiracy."  Id.  The

Third Circuit defers to the discretion of the trial judge in determining the order of proof;

"[t]herefore, evidence of the co-conspirator's statements may be admitted, subject to subsequent

'connecting up' through evidence establishing that there was a conspiracy."  Id.

§ 801.34[6][c][ii]; see also United States v. Gambino, 926 F.2d 1355, 1360–61 (3d Cir. 1991).

        The aforementioned authorities make clear that the government will ultimately have to

prove by a preponderance of the evidence the existence of the conspiracy and the participation of

the authors of the emails in that conspiracy to have the emails admitted into evidence under Rule

801(d)(2)(E).  Yet the government need not meet this burden before trial or even before the

emails are presented to the jury.  In fact, "[t]he defense concedes that there is no requirement that

the Court hold a pretrial hearing to determine the admissibility of alleged co-conspirator's

statements. . . . However, we further submit that there is no reason to delay a determination

regarding the admissibility of the e-mails in question because the government simply has no

evidence to 'connect' these e-mails to during trial."  (Defs.' Mot. to Strike 4 n.1.)  Defendants

argue that upon review of the thousands of pages of documents produced by the government,

they were "unable to find any independent evidence that the alleged conspiracy existed . . . ."  (Id.

at 5.)  The Court need not require such independent proof of the existence of the conspiracy and

the participation of the unindicted coconspirators from the government at this time.  Instead, the

Court will allow the government to defer its burden under Rule 801(d)(2)(E) until trial.

        Defendants also argue that the introduction of the coconspirators' emails may pose a

14

Confrontation Clause issue.  This argument is a non-starter.  Crawford v. Washington, 541 U.S.

36, 51 (2004), prohibits the government from introducing the out-of-court statements of an

unavailable witness if such statements are "testimonial" in nature.  The emails at issue in this

case are clearly not "the functional equivalent" of in-court testimony, "formalized testimonial

materials," or intended "for use at a later trial."  Crawford, 541 U.S. at 51–52.  As the emails

from the alleged co-conspirators are not testimonial, they are not within the purview of Crawford

and their admission will not violate defendants' confrontation rights.  United States v. Hunter,

266 F. App'x 619, 622 (9th Cir. 2008).

### B.    Authentication of Emails

Defendants argue that the emails that form the basis of Overt Acts 1–4, 10–11, 15, 17, 26,

30, and 35–36 cannot be properly authenticated and therefore may not be introduced into

evidence.  (Defs.' Mot. to Strike 5.)  According to defendants, as "the government has no witness

who can testify that the e-mails are what the government purports them to be," the emails cannot

be authenticated under Federal Rule of Evidence 901.  (Id. at 5–6.)

"The requirement of authentication or identification as a condition precedent to

admissibility is satisfied by evidence sufficient to support a finding that the matter in question is

what its proponent claims."  Fed. R. Evid. 901(a).  The Third Circuit has "repeatedly noted that

the burden of proof for authentication is slight."  Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d

318, 328 (3d Cir. 2005) (internal quotation marks & citation omitted).  "[C]ircumstantial

evidence may, in principle, suffice to authenticate a document. . . . All that is required is a

foundation from which the fact-finder could legitimately infer that the evidence is what the

proponent claims it to be."  Link v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 927 (3d Cir.

1986) (internal quotation marks & citations omitted).  The Third Circuit has articulated the

standard for the authentication of documents as follows:

> [T]he showing of authenticity is not on a par with more technical evidentiary rules, such
> as hearsay exceptions, governing admissibility.  *Rather, there need be only a prima facie*
> *showing, to the court, of authenticity, not a full argument on admissibility.*  Once a prima
> facie case is made, the evidence goes to the jury and it is the jury who will ultimately
> determine the authenticity of the evidence, not the court. The only requirement is that
> there has been substantial evidence from which they could infer that the document was
> authentic.

Lexington Ins. Co., 423 F.3d at 329 (emphasis in original) (internal quotation marks & citations

omitted).

Federal Rule of Evidence 901(b) provides a non-exclusive list of "examples of

authentication or identification conforming with the requirements of this rule."  Defendants rely

on Rule 901(b)(1)—"[t]estimony that a matter is what it is claimed to be."  This, however, is not

the sole method of authentication.  Rule 901(b)(4) provides for authentication through

"[d]istinctive characteristics and the like.  Appearance, contents, substance, internal patterns, or

other distinctive characteristics, taken in conjunction with circumstances."  Other courts have

authenticated emails in this manner, relying on the email addresses in the headers, explanations

in the body of the emails, defendants' conduct after receiving the emails, and other circumstantial

evidence.  See, e.g., United States v. Siddiqui, 235 F.3d 1318, 1322–23 (11th Cir. 2000); United

States v. Safavian, 435 F. Supp. 2d 36, 39–42 (D.D.C. 2006).

The government provided three emails as attachments to its response.  The emails contain

Vaghari's name and email address in the headers.  Moreover, the government contends that the

emails were obtained in hard copy form from Vaghari's apartment, bolstering their authenticity.

These distinctive characteristics suffice to withstand defendants' authenticity challenge at this

16

stage of the proceedings.  Accordingly, the Court denies defendants' Motion to Strike on the ground that the emails cannot be properly authenticated.

### C.      Statute of Limitations

Defendants argue that "[i]n the absence of any independent evidence that the conspiracy alleged in Count One of the Indictment existed, Overt Acts Nos. 1–10 must be stricken . . ." as they are "barred by the Statute of Limitations without some evidence that the alleged conspiracy existed apart from the allegations themselves."  (Defs.' Mot. to Strike 7.)[4]

The statute of limitations for violations of the International Emergency Economic Powers Act ("IEEPA") is five years.  See 18 U.S.C. § 3282(a).  Overt Acts 1–10 concern conduct occurring between February 26, 2002 and June 23, 2003—more than five years before the filing of the Indictment on November 13, 2008.  In order to present evidence of such overt acts, the government must prove that they constituted part of a continuing course of conduct with actions occurring within the statute of limitations.  Toussie v. United States, 397 U.S. 112, 114–15 (1970) (holding that although the defendant's initial actions occurred outside of the statue of limitations, "[i]f the offense is a continuing one the prosecution was timely").

With respect to Count One of the Indictment, the conspiracy charge, the Third Circuit has held that "[a] conspiracy is a continuing offense and a jury may consider each and all of a defendant's actions in furtherance of the conspiracy so long as the indictment is brought within five years of the last overt act."  United States v. Jake, 281 F.3d 123, 129 n.6 (3d Cir. 2003) (citing United States v. Johnson, 165 F.2d 42, 45 (3d Cir. 1947)).  All overt acts in furtherance of

---

[4]In United States v. Amirnazmi, No. 08-CR-429-01, 2009 WL 32481, at *1–2 (E.D. Pa. Jan. 5, 2009), the court rejected an almost identical argument.  The court's reasoning in Amirnazmi is persuasive.

the conspiracy may be presented to the jury as long as it is "shown both that the conspiracy still subsisted within the [five] years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period."  Grunewald v. United States, 353 U.S. 391, 397 (1957).  For "both of these aspects, the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy."  Id.; accord Jake, 281 F.3d at 129 n.6.

Accordingly, with respect to the conspiracy charge in Count One, the government may include in the Indictment, and offer evidence at trial of, overt acts that occurred prior to the limitations period as long as those acts were in furtherance of a conspiracy that continued after November 13, 2003.  Count One charges defendants with a conspiracy that continued within the five-year limitations period and involved overt acts in furtherance of that conspiracy that were performed within that period.  Specifically, Overt Acts 11–39 describe conduct that allegedly occurred after November 13, 2003.  Moreover, at this stage of the prosecution, the government need not conclusively prove the existence of the conspiracy in order to include the challenged overt acts in Count One of the Indictment.  For all of these reasons, defendants' Motion to Strike Overt Acts 1–10 from Count One of the Indictment is denied.

While the Indictment delineates the Overt Acts as part of Count One—the conspiracy charge—all of the overt acts are incorporated into Counts Two, Three, and Four, which charge Vaghari with substantive violations of IEEPA.  (Indict. 12–14.)  In light of this incorporation, defendants' statute of limitations challenge to Overt Acts 1–10 also applies to Counts Two,

18

Three, and Four.  At oral argument on July 23, 2009, however, the government consented to striking Overt Acts 1–10 from the three counts charging substantive violations of IEEPA, Counts Two, Three, and Four.  (Suppression Hr'g Tr. 43–45, July 23, 2009.)  Accordingly, defendants' Motion to Strike Overt Acts 1–10 is granted with respect to Counts Two, Three, and Four.

## IV.    CONCLUSION

For all of the aforementioned reasons, defendants' Omnibus Motion to Dismiss is denied. Defendants' Motion to Strike is granted to the extent that Overt Acts 1–10 are stricken from Counts Two, Three, and Four of the Indictment.  In all other respects, defendants' Motion to Strike is denied.