IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| vs. | : | |
| MOHAMMAD REZA VAGHARI | : | NO. 08-693-01 |
| a/k/a "Mitch Vaghari" | : | |
| MIR HOSSEIN GHAEMI | : | -02 |

DuBOIS, J.                                                                                          JULY 7, 2010

## M E M O R A N D U M

**I.     INTRODUCTION**

On November 13, 2008, the government filed a six-count Indictment against defendants Mohammad Reza Vaghari and Mir Hossein Ghaemi. The Indictment charges a conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1705 *et seq.*, in violation of 18 U.S.C. § 371 (Count One); three substantive counts of violating IEEPA, in violation of, *inter alia*, 50 U.S.C. §§ 1701 *et seq.*, and aiding and abetting, in violation of 18 U.S.C. § 2 (Counts Two, Three and Four); naturalization fraud, in violation of 18 U.S.C. § 1425 (Count Five); and possession of immigration documents procured by fraud, in violation of 18 U.S.C. § 1546(a) (Count Six). Vaghari is named in all six counts of the Indictment; Ghaemi is named in Count One.

The Indictment is based on allegations that "[d]efendants together conducted business under the name Saamen Company, LLC ('Saamen')... through which the defendants conspired to export goods, technology, and services from the United States for ultimate delivery to Iran..." in violation of an embargo on such shipments. (Indict. ¶ 3.) Specifically, the government avers

1

that defendants Vaghari and Ghaemi shipped products purchased in the United States to co-conspirators in the United Arab Emirates, "all the while knowing that the purchased products were eventually destined for Iran." (Indict. ¶ 12.) The Indictment further alleges that "the co-conspirators... received the goods... in the United Arab Emirates and then caused those products to be delivered to customers in Iran." (Indict. ¶ 13.)

Presently before the Court is Defendant Vaghari's Motion to Preclude the Government from Offering Expert Testimony From Dr. Matthew Levitt at Trial.[1] In the Motion, defendants move to preclude Dr. Matthew Levitt, the government's proposed expert witness, from testifying at trial. The Court held oral argument on defendants' Motion on June 28, 2010, and further oral argument and a <u>Daubert</u> hearing, at which the testimony of Dr. Levitt was presented via telephone, on June 29, 2010. At the conclusion of proceedings on June 29, 2010, the Court issued an Order denying defendants' Motion, and providing that it would issue a more detailed opinion at a later date. This Memorandum amplifies and expands on the Court's Order of June 29, 2010.

## II. BACKGROUND

By letter to counsel for both defendants, dated May 5, 2010,[2] the government advised that it intended to "qualify Dr. [Matthew] Levitt as an expert on efforts to evade U.S. trade sanctions governing trade with Iran." The government averred that Dr. Levitt would "testify that the

---

[1] Defendant Ghaemi filed a Motion to Join in Defendant Vaghari's [Motion] to Preclude the Expert Testimony of Dr. Matthew Levitt (Document No. 302, filed June 28, 2010). The Motion to Join was granted by Order of June 28, 2010.

[2] The government's expert disclosure letter of May 5, 2010, shall be docketed by the Deputy Clerk

United Arab Emirates is a location through which technology is often trans-shipped from the West to Iran." According to the letter, Dr. Levitt would "offer both expert and percipient witness testimony about this smuggling activity, as well as assorted observations about the nature of, and facts related to, Iran's government, infrastructure, universities, and industry." Dr. Levitt's resume was attached to the letter.

On June 1, 2010, defendant Vaghari filed the instant Motion to Preclude the Government from Offering Expert Testimony From Dr. Matthew Levitt at Trial. In the supporting Memorandum of Law, Vaghari argued for exclusion of Dr. Levitt's testimony on three grounds: (1) the government's disclosure failed to satisfy the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G); (2) the government did not demonstrate a proper foundation for such expert testimony under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993), and Federal Rule of Evidence 702; and (3) Dr. Levitt's testimony should be precluded under Federal Rule of Evidence 403, due to the danger of unfair prejudice resulting from Dr. Levitt's significant background and experience in the area of international terrorism.

On June 25, 2010, the government provided to counsel for both defendants a revised and expanded expert disclosure pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), entitled "Summary of Expert Testimony."[3] In that document, the government states its intent to elicit testimony from Dr. Levitt relating to: (1) the regime of sanctions which govern United States persons "with respect to the transfer of goods or technology with Iran"; and (2) the *modus operandi* of trans-shipment of goods to Iran through Dubai, in the United Arab Emirates. Trans-

---

[3] The government's Summary of Expert Testimony, dated June 25, 2010, shall be docketed by the Deputy Clerk.

shipment is defined by the government as the "transfer of goods... via at least one intermediary stop, which is often represented to the seller of the goods as the final destination of the goods."[4] The Summary of Expert Testimony details Dr. Levitt's qualifications to testify on these matters, as well as the bases and reasons for his opinions. The Summary does not mention any testimony from Dr. Levitt on "assorted observations about... Iran's government, infrastructure, universities, and industry," as set forth in the government's May 5, 2010 disclosure letter.

## III. DISCUSSION

### A. Federal Rule of Criminal Procedure 16(a)(1)(G)

As an initial matter, the Court must address defendants' argument that Dr. Levitt's testimony should be precluded due to the inadequacy of the government's expert disclosure under Federal Rule of Criminal Procedure 16(a)(1)(G). Rule 16(a)(1)(G) provides: "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial... The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). While the government disclosure of May 5, 2010, was insufficient to satisfy the requirements of Rule 16(a)(1)(G), the June 25, 2010 Summary of Expert Testimony meets the standard set forth in the Rule. Specifically, the Summary of Expert Testimony describes the opinions to be offered by Dr. Levitt, identifies the bases and reasons for

---

[4] In his <u>Daubert</u> hearing testimony, Dr. Levitt explained trans-shipment, stating that when a country is under sanction and goods cannot be shipped to the country directly, the country will seek to obtain embargoed goods through a third country, in an effort to evade the sanction. (June 29, 2010 <u>Daubert</u> Hg. Tr. 34.)

4

those conclusions, and states Dr. Levitt's qualifications as they pertain to his ability to offer such opinions. Accordingly, the defendants' motion to preclude Dr. Levitt's testimony at trial on this ground is denied.

B.     **Federal Rule of Evidence 702 – Legal Standard**

Defendants also challenge Dr. Levitt's testimony on the ground that it does not meet the standard for admissibility of expert testimony set forth in Federal Rule of Evidence 702. Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.[5]

The "pathmarking" Supreme Court cases interpreting Rule 702 are Daubert, 509 U.S. 579, and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). United States v. Mitchell, 365 F.3d 215, 234 (3d Cir. 2004) (Becker, J.). In Daubert, the Supreme Court held that "[f]aced with a proffer of expert scientific testimony... the trial judge must determine at the outset... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. In Kumho Tire, the Supreme Court made clear that the Daubert gatekeeping function extends beyond scientific testimony to testimony based on "technical" and "other specialized" knowledge. 526 U.S. at

---

[5] In 2000, Rule 702 was amended to incorporate the holding in Daubert. See United States v. Brownlee, 454 F.3d 131, 142 n.10 (3d Cir. 2006).

141.

Under Daubert, courts must address a "trilogy of restrictions" before permitting the admission of expert testimony: qualification, reliability, and fit. Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003); see also Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert must prove each of these requirements by a preponderance of the evidence. In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999).

### 1. Qualification

To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." Betterbox Comm'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 335 (3d Cir. 2002) (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a certain kind of degree or background when evaluating the qualifications of an expert. See Waldorf, 142 F.3d at 625. "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 855 (3d Cir. 1990) (quoting Fed. R. Evid. 702). Moreover, "[t]his liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Id. (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

Defendants challenge Dr. Levitt's qualifications to opine about trans-shipment of goods

as a *modus operandi* among those attempting to evade the Iran embargo. According to defendants, Dr. Levitt is not qualified to serve as an expert witness because he has had little practical and academic experience in the area of trans-shipment, and has never been qualified to testify at trial to explain trans-shipping. Instead, defendants argue that Dr. Levitt's real areas of expertise are counter-terrorism and international financial transactions. The Court rejects these arguments.

Dr. Levitt earned a Bachelor of Arts of Yeshiva University in Political Science in 1992, a Master's of Law and Diplomacy from the Fletcher School at Tufts University in 1995, and a Ph.D. in International Relations from the Fletcher School in 2005. (June 29, 2010 Daubert Hg. Tr. 39 (hereinafter "Tr.")) Between approximately 1999 and 2001, Dr. Levitt was employed by the F.B.I., where he worked on counter-terrorism issues as an intelligence research specialist and intelligence analyst. (Tr. 31.) He then moved to the Washington Institute for Near East Policy, a non-partisan think-tank in Washington D.C. that focuses on U.S. policies in the Middle East. (Tr. 31.) There, he founded the Institute's Terrorism Program and specialized in "transnational threat financing," which includes the financing of North Korean and Iranian nuclear proliferation, Iraq insurgency, terrorism, and international organized crime. (Tr. 31-32.) Dr. Levitt next worked as Deputy Assistant Secretary for Intelligence and Analysis within the Terrorism and Financial Intelligence Office at the United States Department of the Treasury. (Tr. 32.) He left that position in 2007 to return to the Washington Institute, where he is now a senior fellow and the director of the Program on Counter-Terrorism and Intelligence. (Tr. 28.) In addition, Dr. Levitt is a term member of the Council on Foreign Relations, and has taught courses relating to terrorism and combating the financing of transnational threats at the Johns Hopkins School of

Advanced International Studies ("SAIS"). (Tr. 33-34.)

Dr. Levitt has participated in symposiums held around the world involving the topics of both trans-shipment and international threat financing. (Tr. 39-40.) In the Fall of 2008, Levitt gave a lecture in the United Arab Emirates on "Iran sanctions violations issues," including trans-shipment, in relation to which he later published a monograph in July 2009. (Tr. 39.) As the Deputy Assistant Secretary for Intelligence and Analysis at the Department of the Treasury, Dr. Levitt worked to improve the effectiveness of financial sanctions and trade embargoes, a job requiring analysis of common methods of evasion, including trans-shipment. (Tr. 40.) Moreover, at the Department of the Treasury and as a senior fellow at the Washington Institute, Dr. Levitt has met and conferred with government officials and academics in the United Arab Emirates, Europe, the United States, and elsewhere, concerning the issues of sanction evasion, threat financing, and counter-terrorism more generally. (Tr. 38-39.) Dr. Levitt has also conducted primary field research in Dubai and keeps current on scholarly materials relating to Iran sanctions. (Tr. 37-38.)

Given the extent of Dr. Levitt's practical and academic experience in the area of Iran sanctions, and on the issue of trans-shipment specifically, the Court concludes that Dr. Levitt is qualified to testify about trans-shipment as a *modus operandi* in evading such sanctions. The fact that Dr. Levitt has significant experience in other areas — counter-terrorism and international financial transactions — has no bearing on his competence to testify regarding trans-shipment. Thus, under the liberal standard articulated by the Third Circuit, the Court rules that Dr. Levitt is sufficiently qualified to serve as an expert in this case. See Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal minimum qualifications, then the

level of the expert's expertise goes to credibility and weight, not admissibility.").

### 2. Reliability

The reliability requirement of Daubert "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (hereinafter "Paoli II" ) (quoting Daubert, 509 U.S. at 590). In Kumho Tire, the Supreme Court held that the Daubert test of reliability is "flexible" and that "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141-42 (emphasis in original). In determining whether the reliability requirement is met, courts examine the following factors where appropriate:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Mitchell, 365 F.3d at 235 (citing Paoli II, 35 F.3d at 742 n.8). These factors are neither exhaustive nor applicable in every case. Kannankeril, 128 F.3d at 806-07.

Under the Daubert reliability prong, parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." Paoli II, 35 F.3d at 744 (emphasis in original). "The evidentiary requirement of reliability is lower than the merits standard of correctness." Id. "As long as an expert's scientific testimony rests upon 'good

grounds, based on what is known,' it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Mitchell, 365 F.3d at 244 (quoting Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

Defendants challenge as unreliable Dr. Levitt's testimony concerning trans-shipment as a *modus operandi*. Specifically, defendants contend that Levitt's primary field research — observations of shipping vessels on the Dubai Creek and interviews of Dubai boat captains — fails to satisfy the reliability standard under Daubert. Furthermore, defendants argue that Dr. Levitt's opinion concerning trans-shipment as a *modus operandi* is based on vague and unreliable information regarding Dubai trade in general, and not on data specific to United States exports to Iran through Dubai. Again, the Court rejects defendants' arguments.

Although Dr. Levitt's methodology does not neatly fit into the eight factors listed by the Third Circuit in Mitchell, discussed *supra*, those factors are not mandatory or exhaustive. Kannankeril, 128 F.3d at 806-07. As the Supreme Court observed in Kumho Tire, "the relevant reliability concerns may focus upon [the expert's] personal knowledge or experience." 526 U.S. at 150. As described above, Dr. Levitt has significant academic and practical experience regarding Iran sanctions. He testified that there is "unanimity in academic and government literature" on the role of [the United Arab Emirates] in the trans-shipment of goods to Iran. (Tr. 37.) His own primary field research — conducting observations and interviews on the ground in the United Arab Emirates — along with his education, work as a United States government official, and continuing contact with other academics and government officials around the globe,

10

provide an appropriate and reliable basis for his testimony regarding trans-shipment and Iran sanctions. (Tr. 37-42.) That he cannot offer precise statistics relating to the quantity of goods trans-shipped from the United States to Iran through Dubai, does not render his opinion unreliable for Daubert purposes. The availability of corroborative mathematical data, or lack thereof, is a matter of weight and not admissibility; otherwise stated, it is a proper subject for cross-examination of Dr. Levitt, but not a bar to the admissibility of his testimony. See Mitchell, 365 F.3d at 244.

In short, the Court concludes that Dr. Levitt's opinions are based on "good grounds" and not on "subjective belief or unsupported speculation," as required to support admissibility under Rule 702. See Paoli II, 35 F.3d at 742. Accordingly, the Court rules that Dr. Levitt's opinions are founded on a sufficiently reliable methodology to satisfy the Daubert standard.

### 3. Fit

For expert testimony to meet the Daubert "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (citing United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985) (internal quotations omitted)). "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." Daubert, 509 U.S. at 591.

Defendants first argue that Dr. Levitt's testimony will not assist the jury. In support of this contention, defendants note that regulations issued pursuant to IEEPA plainly prohibit the shipment of goods into Iran, directly or *indirectly*, and that to the extent that there is any

11

confusion concerning the meaning or application of the law in this case, the Court's instructions alone will be sufficient. Defendants further assert that the jury will not require the assistance of an expert to understand the concept of trans-shipment, and that in describing the sanctions and their operation Dr. Levitt will usurp the role of the Court. In response, the government stated unequivocally that it will not elicit testimony from Dr. Levitt concerning the purpose of the sanctions, and that it will seek testimony about the sanctions themselves only to the extent necessary to frame Levitt's opinion concerning trans-shipment as a *modus operandi*. (June 28, 2010 Hg. Tr. 35-36.) Moreover, Dr. Levitt's brief explanation of the operation of the sanctions and common methods of embargo evasion, along with more specific testimony about trans-shipment of goods through Dubai, is relevant to this case and would be helpful to a lay jury in understanding the evidence and determining facts in issue. Particularly in light of defendant Vaghari's potential defense – that the goods were meant for use and consumption in Dubai and not to be shipped on to Iran in violation of IEEPA[6] – Dr. Levitt's *modus operandi* opinion may be of significant probative value.

Secondly, defendants maintain that the Dr. Levitt's opinion is improper evidence of defendants' mental condition and intent. Defendants unconvincingly cite United States v. Watson, 260 F.3d 301, 310 (3d Cir. 2001), for the proposition that *modus operandi* evidence of the sort offered in Dr. Levitt's testimony is barred, since a defendant's intent is an "ultimate issue of fact for the jury to decide" under Federal Rule of Evidence 704(b). (Def. Vaghari's Mem.,

---

[6] Vaghari stated during a nationally televised interview on the "60 Minutes" program, to be received in evidence at trial pursuant to the Court's Order of June 29, 2010, that he believed the exported goods at issue were intended to stay in Dubai, and were never shipped onward from Dubai to Iran.

12

Doc. No. 300, p. 18.) However, in Watson, the Third Circuit explicitly held that expert testimony concerning *modus operandi* does not violate Rule 704(b). 260 F.3d at 308. What the Watson court rejected was a question by the prosecutor about *modus operandi* which was designed to elicit testimony about the defendant's intent. Id. at 309-10. In contrast, Dr. Levitt's Daubert hearing testimony did not address the mental condition or intent of defendants, but focused instead on the general practice of trans-shipment of goods through Dubai. Therefore, Watson does not preclude Dr. Levitt's opinion regarding *modus operandi* in this case.

The Court concludes that Dr. Levitt's testimony would assist the jury in understanding other evidence in the case and in determining facts in issue. Accordingly, the Court rules that the "fit" requirement of the Daubert standard is also satisfied. To the extent that any particular question posed to Dr. Levitt at trial seeks information relating to defendants' intent or state of mind, the Court's ruling is without prejudice to the right of defendants to object.

**C.      Federal Rule of Evidence 403**

Finally, defendants argue that, even to the extent that Dr. Levitt's testimony is admissible pursuant to Rule 702, it should be excluded under Rule 403 due to the resulting prejudice to defendants. Federal Rule of Evidence 403 provides that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed. R. Evid. 403. Expert testimony that is admissible pursuant to Rule 702 and Daubert is nonetheless subject to balancing analysis under Rule 403. See Paoli II, 35 F.3d at 746-47.

Defendants contend that some amount of testimony concerning Dr. Levitt's significant background in terrorism and related areas is inevitable, and that any mention of such issues,

however brief, will be highly prejudicial to defendants. Defendants correctly point out that this case is not a terrorism case, and that defendants are merely charged with shipping products in violation of the Iran embargo. The Court is sensitive to defendants' concerns that references to terrorism may carry some prejudicial effect. However, the government has offered to work with Dr. Levitt and with the defense to minimize such references during the trial. The Court directs that both government and defense counsel take appropriate steps in line with the government's proposal. Moreover, insofar as any of Dr. Levitt's terrorism-related qualifications are inadvertently presented to the jury, the Court will issue an appropriate limiting instruction pursuant to Federal Rule of Evidence 105.[7] With these protections in mind, the Court concludes that the probative value of Dr. Levitt's testimony is not substantially outweighed by the danger of unfair prejudice, and that the testimony is admissible under Rule 403.

## IV. CONCLUSION

With respect to expert opinion testimony, as in other areas of evidence law, it is axiomatic that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595. With this precept in mind, and having determined (1) that the government's second expert disclosure meets the requirements imposed by Federal Rule of Criminal Procedure 16(a)(1)(G), (2) that Dr. Levitt's testimony satisfies Daubert's "trilogy of restrictions" — qualification, reliability, and fit — and, (3) that the

---

[7] Federal Rule of Evidence 105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105.

probative value of his testimony is not substantially outweighed by the danger of unfair prejudice, the Court denies defendants' Daubert motion. Dr. Levitt will be permitted to testify about the operation of Iran sanctions, and the alleged *modus operandi* of trans-shipping goods from the United States to Iran, through Dubai, in violation of the embargo on such shipments. The Court's ruling is without prejudice to the right of defendants to raise specific objections to Dr. Levitt's testimony at trial.